JESSIE A. REDFIELD, Appellant, *v.* CHARLES J. REDFIELD *et al.*, as Executors, etc., Respondents.

*Court of Appeals, October* 23, 1888.

·Affirming same case, 41 Hun, 640, Mem.

1. *Appeal. Findings.*—Since the practice has been changed, and the proposed findings must be presented at the submission of the case, the court of appeals must, for the purpose of construing the findings, look at all of them, both the general and the special findings, and, if they are in conflict, must attempt to reconcile them. If, after such an attempt, this court finds them irreconcilable, then the appellant is entitled to take the findings most favorable to him.

2. *Evidence. Section 829.*—Where the plaintiff claims that her husband had wrongfully taken her stock which he held as trustee for her, and had transferred it to his father who took it with notice of such trust, his testimony on behalf of plaintiff, in an action brought by her against his deceased father's estate for a conversion of said stock, as to a transaction between the witness and the deceased concerning the same, is incompetent under section 829 of the Code, as a recovery would relieve him to that extent from responsibility for said stock.

Appeal from a judgment of the general term of the supreme court, affirming a judgment in favor of defendants entered upon report of a referee.

*Louis Marshall,* for appellant.

*Wm. G. Tracy,* for respondent.

EARL, J.—The theory of the plaintiff is that in January, 1861, she having $750 in money, delivered it to her husband, Lewis H. Redfield, for the purpose of purchasing ten shares of New York Central Railroad stock for her, and that it was arranged between them that the stock should be taken in the name of her husband as trustee for her ; that he pur-

chased the stock and took the certificate in his name as trustee and delivered it to her; that soon thereafter, without her knowledge or consent, he wrongfully and in fraud of her rights, and in breach of his trust, took the certificate of stock from her safe and transferred it to his father, whose name was also Lewis H. Redfield, as collateral security for a loan made to him, and that his father thereafter received large dividends upon the stock and converted the stock and dividends to his own use. The theory of the defendants, the executors of Lewis H. Redfield, Sr., is that the stock was not purchased with the plaintiff's money or for her; that it was purchased by her husband for himself; that it was taken in the name of the deceased as collateral security for money loaned by him to his son, and that it was subsequently for full value sold by the latter to him and by him converted to his own use.

The evidence on the trial to sustain the theory of the plaintiff was mainly that of herself and her husband, and the defendants gave evidence legitimately tending to sustain their theory. In the formal findings of the trial judge, made by him as the basis of the judgment ordered, he found as matter of fact that on or about the 15th day of January, 1861, Lewis H. Redfield, plaintiff's husband, procured to be issued by the New York Central Railroad Company to Lewis H. Redfield, deceased, his father, a certificate for ten shares of its capital stock, the same shares mentioned in the complaint; that the certificate was issued to the deceased as trustee for his son, who was the beneficial owner thereof, as security for such loans as might be made from time to time by him to his son; that loans were so made and thereafter all the right, title and interest of the son in the ten shares of stock were sold and transferred by him to the deceased for their full market value; that the deceased purchased the stock in good faith without knowledge or notice of any interest of the plaintiff therein, or of any trust existing in her favor with respect thereto. And

he found as matter of law that the deceased, by purchase from the plaintiff's husband, became the owner of the stock, and he ordered judgment dismissing the complaint.

We are of the opinion that there was evidence justifying these findings of fact. We do not deem it important to call particular attention to the evidence or to discuss the same as that has been sufficiently done in the able opinions pronounced at the general term. It was for the trial judge in the consideration of all the evidence and in view of some extraordinary features which characterized the plaintiff's case to determine how far she and her husband, both interested witnesses, were to be believed. But the learned counsel for the appellant challenges these findings and claims that they are not to govern in this case because there are other findings which are in conflict with these and which are more favorable to the plaintiff substantially sustaining her theory.

At the time of the submission of the case to the judge, plaintiff's counsel presented certain proposed findings of fact and law upon which he requested the judge to pass, some of which were refused and others found; and so far as they are material we will now call particular attention to them.

The second proposed finding of fact is as follows : " The plaintiff and Lewis H. Redfield, the younger, were married in 1856, and during the time of their marriage, the plaintiff rented various houses, which she sub-let, and thus earned considerable money, so that in January 1861, she had saved, with the knowledge and consent of her husband, for her own use, the sum of $750. This the judge found. It is not found however that that money was used for the purchase of these shares of stock, but simply that she had saved it.

The third, fourth, fifth and sixth findings of fact requested are as follows:

*Third.* " Being desirous of investing this money, she decided to purchase with it ten shares of the stock of the New

York Central Railroad, and believing it to be necessary that the stock should stand in the name of a trustee, she being a married woman, she gave the money to her husband with instructions to purchase for her in his name, as trustee, such stock."

*Fourth.* "On the 15th day of January, 1861, her husband, having received from his wife the money necessary for the purpose of purchasing that stock, directed the firm of Reed & Lathrop to purchase for the account of L. H. Redfield, trustee, ten shares of New York Central stock, and upon being notified of the fact that such stock had been purchased, he paid to the brokers the money which he had received from his wife for that purpose, and on the 16th day of January, 1861, the brokers delivered to him certificate No. 35,035, of the New York Central Railroad Company for ten shares of stock, which recited that L. H. Redfield, trustee, was entitled to ten shares of $100 each, of the capital stock of the New York Central Railroad Company, said stock having been issued upon the surrender of certificate No. 34,899, which had been issued to Reed & Lathrop, and by them transferred on January 15, 1861, to L. H. Redfield, trustee."

*Fifth.* "After receiving the stock from Reed & Lathrop on January 16, 1861, the plaintiff's husband brought the stock to her and delivered to her the certificate thereof, which she placed in a small safe, in which she kept her private papers."

*Sixth.* "Thereafter, and prior to      day of April, 1861, the plaintiff's husband, without her knowledge or consent, wrongfully and in fraud of her rights, and in breach of his trust, took the certificate of said ten shares of stock from the plaintiff's safe, and delivered the same to his father, the defendant's testator, as collateral security for a loan of $700, made to him on the      day of April, 1861, by his father."

These findings were vital to the plaintiff's case, and when

distinctly presented to the mind of the judge, he refused to find them, thus emphatically negativing her theory.

The tenth proposed finding is as follows: "The various transactions between the plaintiff's husband and his father, whereby the plaintiff's stock was pledged and delivered to him, occurred without her knowledge or consent, and she never received any of the moneys realized by her husband upon said stock, or authorized or consented to his borrowing money from his father or any other person on said stock, nor did she know that it had been done until after the commencement of the action, neither did she authorize or consent in any way to a disposition of said stock by her husband to his father or to any other person, or to transfer the title of the stock to him; neither did she know until the commencement of the action that the defendant's testator ever transferred the stock, or that he claimed to own it in his own right." And the court so found. In this finding, evidently by inadvertence, the stock is spoken of as plaintiff's stock. It is not a finding that it was her stock; the judge had just before refused to find any facts showing that it was her stock, or that it was purchased with her money. The general purpose of that finding was to show that the transactions between her husband and his father, were without her knowledge or consent, and that she had no knowledge of them until about the time of the commencement of the action, and so the proposed finding of fact must have been understood by the judge.

The twelfth proposed finding of fact is as follows: "That since the time when the said stock was originally delivered to defendant's testator in fraud of the plaintiff's rights, the following dividends were paid by the New York Central Railroad Company upon each share of its stock down to November 1st, 1869," and then the dividends paid are specified, and the judge so found. There is no finding here that the stock was originally delivered to the defendant's testator in fraud of plaintiff's rights. That is a mere recital

which must, in view of the other findings, have escaped the attention of the judge. The purpose, and the sole purpose of the request, was to show the dividends paid.

The seventeenth finding requested is as follows: "That at the time of the commencement of this action, the market value of the said stock was $127, for each share, and the value of the twenty and seven-tenths shares of stock to which the plaintiff was entitled by virtue of the eighty per cent dividend declared in interest certificates, and the twenty-seven per cent dividend declared in consolidation certificate, in addition to the original ten shares of stock purchased by her, was on said day the sum of $2,626,90, and the court so found. The purpose of this finding was to fix the value of the stock and the dividends mentioned, and again the particular phraseology of the request escaped the attention of the judge.

Following the proposed findings of fact were proposed findings of law, the disposition of which throw light upon what the judge meant in his findings and refusals to find upon the facts. He refused to find the following requests as to the law:

(1.) Upon the issuing of the stock certificate to L. H. Redfield, trustee, on January 16, 1861, Lewis H. Redfield, the plaintiff's husband, became vested with the legal title of said ten shares of New York Central stock, as the trustee for the plaintiff, and she became the equitable owner of said stock.

(2.) The plaintiff's husband, Lewis H. Redfield, by wrongfully taking the said stock out of the plaintiff's possession, without her knowledge or consent, and pledging it to the defendant's testator for his own benefit without her authority or her consent, was guilty of a breach of trust, and an unlawful interference with and misappropriation of the trust property.

(4.) The defendant's testator upon receiving possession of said stock certificate from his son as collateral security,

must be deemed to have known that the plaintiff was the equitable owner of said stock and beneficiary of the trust created with reference thereto.

(5.) The defendant's testator having received the certificate for said ten shares of stock with the constructive knowledge conveyed by it, became a trustee of said stock for the benefit of the plaintiff.

We have held that where the special findings of a judge or a referee differ from the findings formally made as the basis of the judgment, the appellant has the right to rely upon such findings as are most favorable to him. Those decisions were made at a time when the practice authorized the submission of proposed findings to a judge or referee after the decision of the case was rendered ; and under that practice such findings were passed upon generally weeks and frequently months after the formal findings had been made ; and we held that where such findings differed from the prior findings and contradicted them that the appellant had the right to rely upon them if most favorable to him. Tompkins *v.* Lee, 59 N. Y. 662 ; Schwinger *v.* Raymond, 83 id. 192 ; Bonnell *v.* Griswold, 89 id. 122.

Since those decisions the practice has been changed, and now the proposed findings must be presented at the submission of the case and the presumption is that those findings are passed upon when the case is decided and the formal findings made. Hence for the purpose of construing the findings, we must look at all of them, both the general and special findings, and if they are in conflict we must attempt to reconcile them. If after such an attempt we find them irreconcilable then, now, as under the earlier practice, the appellant is entitled to take the findings most favorable to him. Here looking at all the findings of fact and law we are satisfied that the trial judge did not intend to find and that he has not found any fact in conflict with his general findings contained in his formal decision, and they having

been approved at the general term must stand and justify the judgment which was entered.

The counsel for the appellant, however, claims that some errors were committed by the trial judge in ruling upon questions of evidence. Upon the trial the plaintiff called her husband as a witness and after proving by him that he bought the ten shares of stock for his wife with her money, taking the certificate in his name as trustee, that after he received the certificate he took it to her and she put it in her safe, and that he afterwards took it from the safe without her authority, he was asked this question: " Did you afterwards put this stock into the possession of your father, L. H. Redfield, and if so please state under what circumstances and under what agreement, if any, you so placed it in his possession."

The defendants' counsel objected to this as incompetent and inadmissible under section 829 of the Code, and the judge sustained the objection. We think the evidence was properly excluded. The witness was interested in the event of the action. According to the plaintiff's contention and theory the witness had wrongfully taken her stock which he held as trustee for her and had transferred it to his father who took it with notice of the trust. He therefore became responsible to his wife for the stock disposed of to his father. If this action could be maintained and the value of the stock and the dividends thereon recovered then he would be relieved to that extent from responsibility. Hence he was directly interested in the successful maintenance of the action.

We do not think that any of the other exceptions to which our attention has been called require any particular notice.

The judgment should be affirmed, with costs.

All concur, except RUGER, Ch. J., not voting.